

A-04-000786

---

## IN THE NEBRASKA COURT OF APPEALS

---

MORTGAGE ELECTRONIC REGISTRATIONS SYSTEMS, INC.,
Plaintiff/Appellant

vs.

NEBRASKA DEPARTMENT OF BANKING AND FINANCE,
Defendant/Appellee

**BRIEF OF APPELLANT**

APPEAL FROM THE DISTRICT COURT OF
LANCASTER COUNTY, NEBRASKA

The Honorable John A. Colborn

Prepared and submitted by:

James M. Pfeffer, #19177
Joseph T. Breckenridge, #21918
Abrahams Kaslow & Cassman LLP
8712 West Dodge Road, Suite 300
Omaha, Nebraska 68114
Telephone (402) 392-1250
Attorneys for Plaintiff/Appellant



FILED

OCT 15 2004

CLERK
NEBRASKA SUPREME COURT
COURT OF APPEALS

## TABLE OF CONTENTS

Page(s)

TABLE OF CASES AND STATUTES ............................................................ iii

STATEMENT OF THE BASIS OF JURISDICTION .................................... 1

STATEMENT OF THE CASE ...................................................................... 1

    A.    Nature of the Case .................................................................... 1

    B.    Issue Actually Tried in the Court Below .................................. 2

    C.    How the Issue Was Decided and What Judgment Was Entered by the Court Below ................................................... 2

    D.    Scope of Review ...................................................................... 2

ASSIGNMENTS OF ERROR ....................................................................... 2

PROPOSITIONS OF LAW ............................................................................ 3

STATEMENT OF FACTS .............................................................................. 4

ARGUMENT

    I.    THE DISTRICT COURT ERRED IN CONCLUDING THAT MERS MEETS THE DEFINITION OF A "MORTGAGE BANKER" UNDER NEB. REV. STAT. § 45-702(6) AND IS THEREFORE REQUIRED TO REGISTER AS A MORTGAGE BANKER ........................................... 7

        I.A.    MERS DOES NOT "ACQUIRE" MORTGAGE LOANS OR ENGAGE IN ANY OF THE OTHER MORTGAGE BANKING ACTIVITIES DESCRIBED IN § 45-702(6), AND MERS' ABILITY TO EXERCISE INTERESTS IN A MORTGAGE LOAN, INCLUDING THE RIGHT TO FORECLOSE, IS NOT SUFFICIENT TO DEEM THAT MERS ACQUIRES MORTGAGE LOANS BECAUSE MERS MERELY ACTS IN A NOMINEE CAPACITY FOR THE OWNER AND HOLDER OF THE PROMISSORY NOTE SECURED BY THE MORTGAGE. ........................................... 7

I.B.   THE DISTRICT COURT SHOULD HAVE RECOGNIZED THAT MERS' OWNERSHIP OF A LEGAL INTEREST IN THE SECURITY DOCUMENT DOES NOT EQUATE TO MERS' OWNERSHIP OF THE PROMISSORY NOTE OR OTHER DEBT INSTRUMENT EVIDENCING THE LOAN MADE TO THE CONSUMER.............................. 12

II.   THE DISTRICT COURT ERRED BY FAILING TO DETERMINE THAT MORTGAGE LOAN CONSUMERS WILL NOT BE HARMED IF MERS IS NOT REGISTERED AS A MORTGAGE BANKER ..................................... 17

CONCLUSION ........................................................................................................... 22

## TABLE OF CASES

Page(s)

*City of Grand Island v. County of Hall*, 196 Neb. 282, 242 N.W.2d 858 (1976)............ 14

*Connors v. Pantano*, 165 Neb. 515, 86 N.W.2d 367 (1957) ........................................... 14

*Craddock v. Brinkley*, 671 So. 2d 662 (Miss. 1996)...................................................... 16

*DLH, Inc. v. Lancaster County Board of Commissioners*, 264 Neb. 358,
    648 N.W.2d 277 (2002) ...................................................................................... 13

*Equitable Building & Loan Ass'n. of Grand Island v. Equitable Mortgage Corp.*,
    11 Neb. App. 850, 662 N.W.2d 205 (2003)......................................................... 9

*Henkle & Joyce Hardware Co. v. Maco, Inc.*, 195 Neb. 565,
    239 N.W.2d 772 (1976) ...................................................................................... 2

*James v. Paulson*, 261 Neb. 980, 622 N.W.2d 857 (2001)............................................. 2

*Little Blue Natural Resources Dist. v. Lower Platte North Natural Resources Dist.*,
    206 Neb. 535, 294 N.W.2d 598 (1980)............................................................... 14

*Pettigrew v. Home Ins. Co.*, 191 Neb. 312, 214 N.W.2d 920 (1974) .............................. 14

*South Boston Sav. Bank v. Commissioner of Revenue*, 418 Mass. 695,
    640 N.E.2d 462 (1994)........................................................................................ 8

*State v. One 1972-Door Sedan Rambler*, 191 Neb. 462, 215 N.W.2d 845 (1974).......... 14

## STATUTES

Neb. Rev. Stat. § 25-1911 ............................................................................................ 2

Neb. Rev. Stat. § 45-702(6) ..................................................................................2, 3, 5, 7, 13

Neb. Rev. Stat. § 45-702(8) ................................................................................. 13, 14, 15

Neb. Rev. Stat. §§ 45-701 to 45-721 ............................................................................ 1

Neb. Rev. Stat. § 45-704................................................................................................ 6

Neb. Rev. Stat. §§ 84-901 to 84-920 ............................................................................ 6

Neb. Rev. Stat. §§ 76-1001 to 76-1018 ............................................................ 15

## OTHER CITATIONS

Merriam Webster's Collegiate Dictonary 683 (10th Ed. 1993) ........................................ 15

24 C.F.R. Part 3500.21 as of 4/1/03 (HUD's Reg. X)...................................................... 20

## STATEMENT OF THE BASIS OF JURISDICTION

This appeal from the District Court of Lancaster County, Nebraska (the "District Court")
is brought pursuant to Neb. Rev. Stat. § 25-1912. The trial judge entered the District Court's
Order on May 27, 2004. The Notice of Intention to Appeal and requisite docket fee were filed
with the District Court on June 25, 2004.

## STATEMENT OF THE CASE

**A.      Nature of the Case**

Plaintiff/Appellant, Mortgage Electronic Registration Systems, Inc. ("MERS"), appeals
from the Order entered by the District Court on May 27, 2004 in favor of Defendant/Appellee,
the Nebraska Department of Banking and Finance (the "Department"). The District Court's
Order came as the result of MERS' Petition for Review, which MERS filed in the District Court
on November 5, 2003, appealing the decision of the Department that MERS meets the
requirements of a mortgage banker under the Nebraska Mortgage Bankers Registration and
Licensing Act (the "Act"), <u>Neb</u>. <u>Rev</u>. <u>Stat</u>. §§ 45-701 to 45-721 (1998 and Supp. 2003). (T38)
In the District Court's Order, the trial judge, John A. Colborn, ruled that MERS <u>acquires</u>
mortgage loans under the Act, and is therefore required to register under the Act in order to
continue to conduct business in the State of Nebraska. (T42) The District Court did not find that
there is a bifurcation of interests between the holder of the promissory note evidencing a
mortgage loan and MERS, which only holds the beneficial interest in the mortgage itself, in a
nominee capacity for the owner and holder of the promissory note secured by such mortgage.
(T42) MERS then filed this appeal.

**B.**      **Issue Actually Tried in the Court Below**

1.      Whether MERS acquires mortgages loans under the Act and is therefore required to register as a mortgage banker in Nebraska.

**C.**      **How the Issue Was Decided and What Judgment Was Entered by the Court Below**

1.      The District Court ruled that MERS does acquire mortgage loans under the Act and is therefore required to register as a mortgage banker in Nebraska.

**D.**      **Scope of Review**

"A judgment rendered or final order made by the district court may be reversed, vacated, or modified for errors appearing on the record." Neb. Rev. Stat. § 25-1911.

"In actions at law, the findings of the trier of fact will not be set aside on appeal unless clearly wrong.  In determining the sufficiency of the evidence to sustain the judgment, that evidence must be considered in the light most favorable to the successful party.  Every controverted fact must be resolved in favor of the successful party, and the successful party is entitled to the benefit of any reasonably deducible inferences." *Henkle & Joyce Hardware Co. v. Maco, Inc.*, 195 Neb. 565, 239 N.W.2d 772 (1976).

On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *James v. Paulson*, 261 Neb. 980, 622 N.W.2d 857 (2001).

**ASSIGNMENTS OF ERROR**

1.      MERS does not meet the definition of a mortgage banker because MERS does not engage in any of the mortgage banking activities described in § 45-702(6) of the Act. Specifically, the District Court erred in determining that MERS "acquires" mortgage loans. Because MERS does not acquire mortgage loans and is therefore not a mortgage banker for

2

purposes of § 45-702(6), the District Court's Order and determination that MERS is required to register as a mortgage banker under the Act should be reversed and this Court should find that MERS is not a mortgage banker under the Act and is therefore not required to register under the Act.

2.      The District Court erred in concluding that MERS' ability to exercise interests in a mortgage loan, including the right to foreclose, is sufficient to deem MERS as acquiring mortgage loans under the Act because the District Court failed to recognize that MERS merely serves in a nominee capacity for the owner and holder of the promissory note secured by the mortgage.

3.      The District Court erred by not finding that MERS' ownership of a legal interest in the mortgage does not equate to MERS' ownership of the promissory note.

4.      The District Court erred by not finding that mortgage loan consumers will not be harmed if MERS is not registered as a mortgage banker under the Act.

## PROPOSITIONS OF LAW

### I.

THE COMMON PARLANCE OF THE WORD "ACQUIRE" IN THE MORTGAGE BANKING INDUSTRY REFERS TO AN INVESTOR'S ACQUISITION OF A MORTGAGE LOAN ON THE SECONDARY MARKET.

*South Boston Sav. Bank v. Commissioner of Revenue*, 640 N.E.2d 462 (Mass. 1994).

### II.

A MORTGAGE AND A PROMISSORY NOTE ARE SEPARATE AND DISTINCT INSTRUMENTS.

*Craddock v. Brinkley, 671 So. 2d 662 (*Miss. 1996).

JTB/303151.5

## III.

THE MERS® SYSTEM DOES NOT ADVERSELY AFFECT THE
BORROWER'S RIGHT TO LOAN INFORMATION BECAUSE, UNDER
FEDERAL LAWS, EACH TIME THE SERVICING RIGHTS TO A
MORTGAGE LOAN CHANGE, THE BORROWER IS NOTIFIED OF THE
NEW SERVICER OF THE LOAN.

24 C.F.R. Part 3500.21 as of 4/1/03 (HUD's Reg. X).

## STATEMENT OF FACTS

MERS is a private corporation and is a wholly owned subsidiary of MERSCORP, INC.

MERS' sole purpose is to hold mortgage liens in a nominee (limited form of agency) capacity for

its members.  The mortgage information is registered on the MERS® System.  The MERS®

System is a national electronic registry created by the mortgage banking industry to track the

transfer of ownership interests and servicing rights in mortgage loans. (T17)  Over the life of a

mortgage loan, the ownership of the mortgage loan and the servicing rights of the mortgage loan

are likely to be sold and resold many times.  (T16)  Prior to MERS, an assignment or other

appropriate document was required to be filed in the real estate records each time the servicing

rights of a mortgage loan were transferred because the new servicer needed to appear in the land

records in order to receive service of process.  (T16)  This process resulted in missed or

inaccurate assignments causing an unclear or broken chain of title to a mortgage loan in the real

estate records. (T16)  As a consequence, the transfer of the ownership interest in, including legal

title to, mortgage loans, and the servicing rights relating to mortgage loans, and the release of

mortgage liens was a cumbersome and expensive process to all involved.  (T16)  Prior to MERS,

consumers were especially hit hard because research and recording costs were often passed on to

consumers.  (T16)

To address these problems, in 1991 the Government National Mortgage Association ("Ginnie Mae"), the Mortgage Bankers Association of America ("MBA"), the Federal National Mortgage Association ("Fannie Mae"), the Federal Home Loan Mortgage Corporation ("Freddie Mac") and others within the mortgage banking industry created MERS to provide an electronic registration system and clearinghouse for title to mortgage loans and servicing rights that is similar to the process successfully used by the Depository Trust Company for the securities industry.  (T16)  The MERS® System has been endorsed by, and MERS' members include, the MBA and many large and prominent national and international lenders, agencies such as Fannie Mae, Freddie Mac, and the American Land Title Association and many of the largest and most well-known title companies. (T16, 17)

MERS serves as the mortgagee of record in a nominee (i.e., agency) capacity for the approximately 1600+ mortgage lenders registered in the MERS® System.  MERS becomes the mortgagee of record with respect to such mortgage loans, as nominee for the beneficial owner of the mortgage loan, in one of two ways:  (1) the borrower and the lender name MERS as the mortgagee of record at the time the mortgage loan is originated, or (2) the lender causes a mortgage lien for which the lender previously originated or acquired the note secured by the mortgage to be assigned of record to MERS, so that MERS becomes the mortgagee of record in the real estate records in which the mortgage was recorded.  (E3, 4:3, Vol. II)

By letter dated July 11, 2002, the Department notified MERS that MERS meets the definition of a mortgage banker under Neb. Rev. Stat. § 45-702(6) (1998 & Supp. 2003) of the Act because MERS is "acquiring loans as a nominee for lenders in Nebraska".  The Department indicated that MERS must register as a mortgage banker in Nebraska pursuant to § 45-704 or

notify the Department of an exemption under the Act.  (E2, E1, 14:3, Vol. II)  MERS is not registered as a mortgage banker in any other state.  (5:11-19)

After the Department's July 11, 2002 correspondence, MERS and the Department exchanged numerous faxes, letters and phone calls concerning whether MERS is required to register as a mortgage banker under the Act.  (E2, E1, 1-13:3, Vol. II)  On June 19, 2003, MERS filed a Petition for Declaratory Order ("Petition For Declaratory Order") with the Department seeking a formal determination as to whether MERS is a mortgage banker within the meaning of the Act, and therefore, required to register as such under the Act.  (E3, 1:3, Vol. II)  A hearing on MERS' Petition for Declaratory Order was held before Samuel P. Baird (the "Director"), Director of the Department, on August 13, 2003.  During oral arguments, MERS and the Department narrowed the issue before the Director to the question of whether MERS' activities in Nebraska constitute, directly or indirectly, "acquiring mortgage loans" within the meaning of the Act.  (E3, 26:3, Vol. II)  The Department issued its Declaratory Order on October 7, 2003, finding that MERS is a mortgage banker under the Act.  As the basis for its decision, the Department stated that MERS directly or indirectly acquires mortgage loans.  As the result, the Department declared that MERS is required to register as a mortgage banker.  (E3, 25-29:3, Vol. II)

On November 5, 2003, MERS commenced its action in the District Court pursuant to the Administrative Procedure Act, Neb. Rev. Stat. §§ 84-901 to 84-920 (1999 & Supp. 2003), petitioning the District Court to review the Department's determination that MERS meets the definition of a mortgage banker under the Act.  In its Order, the District Court upheld the Department's determination that MERS acquires mortgage loans under the Act and is therefore required to be licensed as a mortgage banker under the Act.  (T41-43)

JTB/303151.5

ARGUMENT

I.

**THE DISTRICT COURT ERRED IN CONCLUDING THAT MERS MEETS THE DEFINITION A "MORTGAGE BANKER" UNDER NEB. REV. STAT. § 45-702(6).**

I.A.

**MERS DOES NOT "ACQUIRE" MORTGAGE LOANS OR ENGAGE IN ANY OF THE OTHER MORTGAGE BANKING ACTIVITIES DESCRIBED IN § 45-702(6), AND MERS' ABILITY TO EXERCISE INTERESTS IN A MORTGAGE LOAN, INCLUDING THE RIGHT TO FORECLOSE, IS NOT SUFFICIENT TO DEEM THAT MERS ACQUIRES MORTGAGE LOANS BECAUSE MERS MERELY ACTS IN A NOMINEE CAPACITY FOR THE OWNER AND HOLDER OF THE PROMISSORY NOTE SECURED BY THE MORTGAGE.**

Section 45-702(6) of the Act provides:  "Mortgage banker means any person not exempt under section 45-703 who, for compensation or gain or in the expectation of compensation or gain, <u>directly or indirectly makes, originates, services, negotiates, acquires, sells, arranges for, or offers to make, originate, service, negotiate, acquire, sell, or arrange for ten or more mortgage loans</u> in a calendar year".  Neb. Rev. Stat. § 45-702(6) (1998 & Supp. 2003) (emphasis added).

MERS does not take applications for, underwrite or negotiate mortgage loans.  MERS does not make or originate mortgage loans to consumers.  MERS does not extend any credit to consumers.  MERS does not service mortgage loans.  MERS does not sell mortgage loans. Most

importantly, MERS is not an investor who acquires mortgage loans on the secondary market. (E3, 18:3, Vol. II)

The Department and MERS agree that MERS does not underwrite, make, originate, service, negotiate, sell, arrange for or offer to make, originate, service, negotiate, sell or arrange for mortgage loans. Therefore, the Department and MERS are in agreement that the only statutory activity at issue, and the only issue for this Court to decide, is whether MERS <u>acquires</u> mortgage loans. (E3, 26:3, Vol. II)

Although the legislative history of the Act does not discuss why the term "acquire" was used in § 45-702(6), the common parlance of the word "acquire" in the mortgage banking industry refers to an investor's acquisition of a mortgage loan on the secondary market. For instance, in *South Boston Sav. Bank v. Commissioner of Revenue*, 640 N.E.2d 462 (Mass. 1994), a Massachusetts court characterized the two ways a bank may come into possession of a mortgage loan. The court, in *South Boston Sav. Bank*, stated: "A bank may come into possession of a mortgage loan either by directly issuing a loan secured by the mortgage of real estate <u>or by acquiring a loan previously issued by another lender</u>." *Id*. at 466-67 (emphasis added).

A brief history of why the secondary mortgage market was created helps illustrate this commonly understood meaning of the term "acquire". The secondary mortgage market evolved to facilitate the free flow of money available for mortgage loans to consumers. Without the secondary market, primary mortgage lenders would be limited in the amount of mortgage loans they could make to consumers because they only have so much capital available to make mortgage loans. Through the secondary market, investors acquire loans from the primary mortgage lenders, thus providing primary lenders with more capital to make additional mortgage loans. The secondary market ultimately provides a free-flow of cash to mortgage lenders to

make loans to consumers to purchase homes.  The primary mortgage lenders benefit because they have additional capital to make more loans and they also receive their ordinary lender's fees/commissions for originating the loan.  The investors benefit because, as owners of the loans, they are entitled to the interest income to be earned from the loans.  Consumers benefit because there are more funds available for mortgage loans so more consumers can get mortgage financing.

Besides loan "servicing" activities, all of the mortgage banking activities described in § 45-702(6) involve the extension of credit.  This Court has previously recognized that mortgage bankers lend money to consumers.  In *Equitable Building and Loan Association of Grand Island v. Equitable Mortgage Corporation*, 11 Neb. App. 850, 662 N.W. 2d 205 (Neb. 2003), the court stated that "a mortgage banker actually lends its own money, closes the loans, earns a service premium for the loans, and then sells the loans to another bank." *Id*. at 209 (emphasis added). The question then becomes whether MERS lends money to consumers to purchase homes, either at the primary or secondary level.  It is not disputed that MERS is not a primary lender who makes, originates, or negotiates or arranges for the making or originating of a mortgage loan directly to a consumer.  Similarly, MERS is not an investor who acquires or negotiates or arranges for the acquisition of mortgage loans on the secondary market or a bank or servicing company which acquires the servicing rights to mortgage loans for fee income.  (E3, 18:3, Vol. II)

There is no rational basis for determining that MERS acquires loans.  In its Order, the District Court stated:

The procedures for members using the MERS system and documents used for recording the mortgages [or] other security documents reference MERS as having

9

the right "to exercise interests, including, but not limited to, the right to foreclose and sell the property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument."  MERS' active participation in the mortgage loan industry of indirectly or directly acquiring legal title to mortgages along with the ability to exercise lender rights such as foreclosure are sufficient to classify MERS as "acquiring" mortgage loans as referenced under Neb. Rev. Stat. § 45-702(6).  (T42)

In its Order, the District Court failed to recognize that MERS, in its agreement with its members, cannot exercise, and is contractually prohibited from exercising, any of the rights or interests in the mortgages or other security documents.  MERS is named as the "nominee" owner unless and until it is authorized to do so by the real and beneficial owners of such security documents.  (T38-43)  In the Terms and Conditions between MERS and its members, MERS' authority is clearly limited as evidenced by the following provision from the Terms and Conditions:

> MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time.  MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans.  MERS agrees not to assert any rights (other than rights specified in the Governing Documents) with respect to such mortgage loans or mortgaged properties.  (E3,13:3, Vol. II)

MERS only acts when directed to by its members and for the sole benefit of the owners and holders of the promissory notes secured by the mortgage instruments naming MERS as nominee owner.  For this reason, MERS' ability to exercise any interests in mortgage loans, including the right to foreclose, is not sufficient to deem MERS as acquiring mortgage loans under the Act because MERS does not receive any of the benefits from taking such actions. MERS has no interest at all in the promissory note evidencing the mortgage loan.  MERS has no financial or other interest in whether or not a mortgage loan is repaid.  As described above, MERS simply holds mortgage liens in a nominee capacity and through its electronic registry, tracks changes in the ownership of mortgage loans and the servicing rights related thereto. MERS is clearly listed as a nominee in the mortgage, which is recorded in the real estate records. When a MERS member sells or transfers a mortgage loan or the servicing rights thereunder, MERS tracks such sale or transfer in the MERS® System and there is no need for filing anything in the real estate records because the mortgage lien remains with MERS.  Once MERS becomes the mortgagee of record of a mortgage, MERS remains the mortgagee of record of the mortgage even when the beneficial ownership interest in the promissory note secured by the mortgage or the servicing rights are sold or transferred from one MERS member to another.  (E3, 3-5:3, Vol. II)  In addition, MERS is required by the various State recording statutes to have a recordable interest in the mortgage in order for MERS to be named in the mortgage. Consequently, MERS is named as the mortgagee in a nominee capacity for the actual owner and holder of the promissory note secured by the mortgagee as described above.

MERS is not the owner of the promissory note secured by the mortgage and has no rights to the payments made by the debtor on such promissory note.  Rather, MERS holds the mortgage lien as nominee for the owner of the promissory note.  MERS is not the owner of the servicing

rights relating to the mortgage loan and MERS does not service loans.  The beneficial interest in the mortgage (or the person or entity whose interest is secured by the mortgage) runs to the owner and holder of the promissory note.  In essence, MERS immobilizes the mortgage lien while transfers of the promissory notes and servicing rights continue to occur.  (E3,5:3, Vol. II)

For the foregoing reasons, MERS cannot be deemed to be acquiring mortgage loans under the Act and does not otherwise meet the definition of a mortgage banker.  Consequently, the Court should reverse the District Court's Order that MERS is required to register as a mortgage banker.

### I.B.

### THE DISTRICT COURT SHOULD HAVE RECOGNIZED THAT MERS' OWNERSHIP OF A LEGAL INTEREST IN THE SECURITY DOCUMENT DOES NOT EQUATE TO MERS' OWNERSHIP OF THE PROMISSORY NOTE OR OTHER DEBT INSTRUMENT EVIDENCING THE LOAN MADE TO THE CONSUMER.

Each of the categories of persons listed in § 45-702(6) directly or indirectly receive consideration from mortgage loans and have an ownership or servicing interest in the notes secured by mortgages.  As more fully explained below, MERS does not make or acquire promissory notes or debt instruments of any nature and therefore cannot be said to be acquiring mortgage loans.  MERS simply holds legal title to mortgages and deeds of trust as a nominee for the owner of the promissory note. MERS has no interest in the notes secured by mortgages or the servicing rights related thereto.

JTB/303151.5

The Department asserts that MERS directly or indirectly acquires mortgage loans because MERS holds legal title to deeds of trust or mortgages in a nominee capacity for lenders. At the hearing on MERS' Petition for Declaratory Order, counsel for the Department stated: "MERS is the mortgage nominee or beneficiary nominee. Therefore, it acquires the legal title to the mortgage loan when the conveyance is recorded." (E2, 5:3, Vol. II) Furthermore, the Department asserts that MERS holds title to Nebraska real property. (E3, 4-5:3, Vol. II) These assertions by the Department are in error. MERS holds legal title to the mortgage or deed of trust in a nominee capacity simply to immobilize the mortgage lien in MERS and to provide MERS with a recordable interest to comply with the recording statutes of various states. The mortgage loan refers to the promissory note to which MERS does not acquire any interest.

The Department's analysis is fundamentally flawed because it fails to recognize an important distinction between a loan instrument and a security instrument. By stating that MERS acquires legal title to the "mortgage loan", the Department confuses the analysis. MERS does not acquire any interest (legal or beneficial) in the loan instrument (i.e., the promissory note or other debt instrument). Rather, MERS, in a nominee capacity for lenders, merely acquires legal title to the security instrument (i.e., the deed of trust or mortgage that secures the loan).

The Department's position that "mortgage loans are not legally divided under the Act" is incorrect. In § 45-702(6), the word "mortgage" modifies the word "loans" to specify certain types of loans – loans secured by interests in real property. The Act's definition of a "mortgage loan" in § 45-702(8) makes this point even more certain. Section 45-702(8) of the Act defines "mortgage loan" to mean "any loan or extension of credit secured by a lien on real property, including a refinancing of a contract of sale or an assumption or refinancing of a prior loan or extension of credit." Neb. Rev. Stat. § 45-702(8) (1998 and Supp. 2003) (emphasis added).

13

Absent anything to the contrary, statutory language is to be given its plain meaning, and a court will not look beyond a statute or interpret it when the meaning of its words are plain, direct and unambiguous. *DLH, Inc. v. Lancaster County Board of Commissioners*, 264 Neb. 358, 648 N.W.2d 277 (2002). Further, in *Little Blue Natural Resources District v. Lower Platte North Natural Resources District*, 206 Neb. 535, 294 N.W.2d 598 (1980), the court stated:

> <u>Cardinal rules of statutory construction, however, prohibit us from ignoring entire phrases of a statute or giving the plain meaning of a statute a strained or absurd interpretation</u>. "Where the language of a statute is plain and unambiguous, no interpretation is needed and the court is without authority to change the language." *City of Grand Island v. County of Hall*, 196 Neb. 282, 286, 242 N.W.2d 858, 861 (1976).
>
> In interpreting the meaning of a statutory provision, the whole provision should be read in order to arrive at a conclusion as to its proper meaning. *Pettigrew v. Home Ins. Co.*, 191 Neb. 312, 214 N.W.2d 920 (1974). Moreover, courts should give statutory language its plain and ordinary meaning. *State v. One 1970 2-Door Sedan Rambler*, 191 Neb. 462, 215 N.W.2d 849 (1974); *Connors v. Pantano*, 165 Neb. 515, 86 N.W.2d 367 (1957).

*Little Blue Natural Resources District*, 294 N.W.2d at 603 (emphasis added).

From the plain face of § 45-702(8), it is clear that the Act is intended to regulate and to require the licensure of persons who, *inter alia*, acquire "loans", not persons who acquire mortgages, deeds of trust or other security instruments. The words "any loan or extension of credit" set forth in § 45-702(8) clearly suggest that the lending of money or extending of credit or arranging for or negotiating the lending of money (for example a loan broker) is the conduct

14

being regulated by the Act.   This "plain meaning" interpretation of the Act's definition of "mortgage loan" is in accord with the commonly understood meaning of the word "loan".

Webster's Dictionary defines "loan" as: money lent at interest; something lent usually for the borrower's temporary use; etc.  Merriam Webster's Collegiate Dictionary 683 (10th ed. 1993). Since MERS does not acquire any interest in a debt instrument evidencing a loan (i.e., money being lent at interest) and does not make loans, arrange for loans or negotiate the terms of loans, it cannot be said to be acquiring loans, including mortgage loans, and therefore it logically cannot be deemed a mortgage banker.  Thus, under a "plain meaning" interpretation of the Act, including the definition of a mortgage banker, in order for a person to acquire a mortgage loan, such person must acquire a legal or beneficial interest in the promissory note or other debt instrument evidencing such mortgage loan.

As demonstrated above, the Act distinguishes the interests in the promissory note or debt instrument on the one hand, from interests in the deed of trust or security instrument on the other. It is important to understand that MERS may acquire a legal interest in a mortgage or deed of trust (as nominee for the actual lender) without acquiring any corresponding interest, legal or beneficial, in the promissory note secured by such deed of trust.  This is because the note owner appoints MERS to be its agent to only hold the mortgage lien interest, not to hold any interest in the note.  Besides MERS, other parties acquire legal interests in deeds of trust without being deemed mortgage bankers under the Act.  For instance, under the Nebraska Trust Deeds Act, Neb. Rev. Stat. §§ 76-1001 to 76-1018 (1996 and Supp. 2003), a borrower may convey real property by a trust deed to a third party trustee as security for the performance of the borrower's obligations to his/her lender.  Although a trustee under the Nebraska Trust Deeds Act receives legal title to the trust deed securing the borrower's obligations, the trustee often does not hold an

interest (legal or beneficial) in the promissory note or debt instrument evidencing the borrower's obligations. As such, the trustee merely holds legal title in a nominee capacity for the lender, much like MERS. Yet, neither the Trust Deeds Act nor the Mortgage Bankers Act requires such trustees to register as a mortgage banker, despite holding legal title.

In addition to the foregoing, courts have frequently noted the critical difference between loan instruments and security instruments. A mortgage and a promissory note are separate and distinct documents. *Craddock v. Brinkley*, 671 So. 2d 662, 665 (Miss. 1996).

Accordingly, a person may hold legal title to a note while appointing another entity to hold legal title to the mortgage securing such note. In the mortgage banking industry, it is standard industry practice for an investor, such as Fannie Mae or Freddie Mac, to hold legal title to notes secured by mortgages and use a separate servicing entity to hold title to the mortgage via a recorded mortgage or assignment. With the development of MERS, these interests are now split three ways instead of two. The investor continues to own and hold the promissory note, but under the MERS® System, the servicing entity only holds contractual servicing rights and MERS holds legal title to the mortgage as nominee for the benefit of the investor (or owner and holder of the note) and not for itself. MERS does not hold any interest (legal or beneficial) in the promissory notes that are secured by such mortgages or in any servicing rights associated with the mortgage loan. The debtor on the note owes no obligation to MERS and does not pay MERS on the note. MERS holds legal title to the mortgage for the benefit of the owner of the note. In effect, the mortgage lien becomes immobilized by MERS continuing to hold the mortgage lien when the note is sold from one investor to another via an endorsement and delivery of the note or the transfer of the servicing rights from one MERS member to another MERS member via a purchase and sale agreement which is a non-recordable contractual right. Legal title to the

16

mortgage remains in MERS after such transfers and is tracked by MERS in its electronic registry. (E3, 4-5:3, Vol. II)

As demonstrated above, MERS cannot be deemed to be acquiring mortgage loans under the Act because it does not obtain legal or beneficial title in loan instruments. MERS does not acquire an interest in promissory notes or debt instruments of any nature. Plainly interpreted, the Act requires the licensure of persons who acquire <u>loans of the mortgage variety</u> (i.e., loans secured by mortgages). For these reasons, the Court should recognize that MERS' ownership of a legal interest in the security documents registered on the MERS® System does not equate to MERS ownership of the debt instruments evidencing the loans made to consumers. The Court should further recognize that without owning an interest in the debt instruments, MERS cannot be deemed to be acquiring mortgage **loans** under the Act. As a result, the Court should reverse the District Court's Order that MERS is required to be registered as a mortgage banker.

For the foregoing reasons, the District Court erred in concluding that MERS meets the definition of a "mortgage banker" under Neb. Rev. Stat. § 45-702(6). Consequently, the Court should reverse the District Court's Order and determination that MERS is required to register as a mortgage banker under the Act and the Court should find that MERS is not a mortgage banker under the Act and is therefore not required to register under the Act.

## II.

## THE DISTRICT COURT ERRED BY FAILING TO DETERMINE THAT MORTGAGE LOAN CONSUMERS WILL NOT BE HARMED IF MERS IS NOT REGISTERED AS A MORTGAGE BANKER.

The Department asserts that a number of potential problems for mortgage loan customers could arise if MERS is not registered as a mortgage banker, including:

1.  MERS keeps all of its records for mortgage transactions in its central database, which is accessible only to its clients with a legal interest in the mortgage.

2.  Without licensure, MERS is not required to post a surety bond or other form of security to protect consumers from damages resulting from its potential inaction or action.

3.  Due to the private nature of MERS' business, if MERS goes out of business, its records may become completely inaccessible to the public and the expenses to update the public records may be significant.

4.  MERS may fail to timely release the security interest it holds legal title to under a deed of trust or mortgage when a mortgage loan is paid off.

5.  Consumers may discover that real estate liens are not properly recorded, and if MERS is not required to maintain a license, MERS does not have an incentive to answer consumer complaints and consumers would not have a venue.  (E2, 10-11:3, Vol. II)

The Department's concern with each of these potential problems is misplaced.  In the mortgage banking industry, after a mortgage loan is made, it is standard practice for the promissory note evidencing the loan and the servicing rights associated with the loan to be transferred, sold and resold many times.  Prior to MERS, an assignment or other appropriate document was required to be filed in the real estate records each time the servicing rights of a mortgage loan were transferred because the new servicer needed to appear in the land records in

18

order to receive service of process. This resulted in missed or inaccurate assignments causing an unclear or broken chain of title to a mortgage loan in the real estate records.  As a consequence, the transfer of the ownership interest in, including legal title to, mortgage loans, and the servicing rights relating to mortgage loans, and the release of mortgage liens was a cumbersome and expensive process to all involved, including consumers because the research and recording costs are often passed on to the consumer. (E3, 3:3, Vol. II)

The MERS® System provides an enormous cost benefit to consumers because these recording and research costs, which were formally passed on to the consumers, no longer exist under the MERS® System. The MERS® System simply is a way to increase the efficiency and accuracy of tracking the ownership of the rights associated with mortgage loans so that the mortgage industry can better and more economically serve a greater number of people.  What MERS tracks are non-recordable transfers.  Servicing rights are transferred vis-à-vis a purchase and sale agreement which is a non-recordable contract right.  The beneficial note interests are transferred by endorsement and delivery of the note which is also a non-recordable event.  The mortgage lien remains with MERS so no assignment of the mortgage lien is needed when these non-recordable transfers occur and are tracked on the MERS® System.

Other than the cost savings that the MERS® System passes on to consumers of loans from MERS members, consumers are largely unaffected by MERS' involvement in the mortgage banking industry.  It is true that MERS' registry or database (tracking the ownership interest and servicing rights) is only accessible by MERS' members, the public, at no cost, has access to the name and telephone number of the current mortgage servicer 7 days a week, 24 hours a day.  It is the servicer that the consumer needs to contact for specific loan information, not MERS.  Moreover, the MERS® System does not adversely affect the borrower's right to such

19

information because, under federal laws, each time the servicing rights to a mortgage loan change, the borrower is notified of the new servicer of the loan. *See* 24 C.F.R. Part 3500.21 as of 4/1/03 (HUD's Reg. X).

Furthermore, none of the other potential problems noted above by the Department adversely affect consumers. MERS is largely transparent to the consumer. Original lenders of mortgage loans, investors who purchase or acquire mortgage loans on the secondary market, and servicers of mortgage loans are the "persons" under the Act that mortgage loan consumers need to be protected from because it is these persons who actually underwrite loans, make loans, service loans, acquire loans, and ultimately decide whether or not a consumer is in default on the loan.

MERS does not collect mortgage payments. MERS does not hold escrows for taxes and insurance. MERS does not provide any servicing functions on mortgage loans, whatsoever. Those rights are typically held by the servicer of the loan, who may or may not also be the holder of the note. The beneficial interest in the mortgage (or the person or entity whose interest is secured by the mortgage) runs to the owner and holder of the promissory note and/or servicing rights thereunder.

From a consumer protection standpoint, MERS is invisible to a consumer. In the event a consumer has a problem with his/her mortgage loan, such consumer is not going to contact MERS, but the servicer of the loan. As MERS merely holds legal title to the security instrument as nominee for the lender, it lacks authority to do anything more than notify the lender or loan servicer of the consumer's complaint. Other than holding legal title to the security instrument in order to immobilize the lien in the real estate records, any other action taken by MERS with

respect to a consumer's mortgage loan is taken at the direct instruction of the lender or loan servicer and for such lender or loan servicer's benefit.

To further illustrate this lack of authority, the Terms and Conditions governing the relationship with MERS and its members provides:

> MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time. MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans. MERS agrees not to assert any rights (other than rights specified in the Governing Documents) with respect to such mortgage loans or mortgaged properties. (E3, 13:3, Vol. II)

Based upon the foregoing, there is no benefit to mortgage loan consumers in requiring MERS to be licensed as a mortgage banker. MERS' sole function to the mortgage banking industry is to track changes in the ownership and servicing rights in mortgage loans on its electronic registry. In order for MERS to track such changes, the recording laws require MERS to hold legal title to the deed of trust securing the consumer's mortgage loan in a nominee or administrative capacity for the real lender. The Act is intended to protect consumers from lenders and loan service providers, not MERS, because these are the parties that make decisions with respect to consumers' mortgage loans. Any action taken by MERS with respect to a consumer's mortgage loan is taken at the direct instruction of the lender or loan service provider. Because consumers will not be harmed if MERS is not registered as a mortgage banker, the

JTB/303151.5

Court should reverse the District Court's Order that MERS is required to be registered as a mortgage banker.

## CONCLUSION

MERS does not meet the Act's definition of a mortgage banker.  MERS does not directly or indirectly make, originate, service negotiate, acquire, sell, arrange for or offer to make, originate, service, negotiate, acquire, sell, arrange for mortgage loans.  MERS does not receive compensation or gain in consideration for its performance of any of the mortgage banking activities described in the Act.  MERS does not obtain legal or beneficial title to promissory notes or other debt instruments; therefore, under a "plain meaning" interpretation of the Act, it cannot be deemed to be acquiring mortgage loans.  Finally, mortgage loan consumers will not be harmed if MERS is not required to register as a mortgage banker.  For the foregoing reasons, MERS is not a mortgage banker for purposes of § 45-702(6), and the District Court's Order and conclusion that MERS is required to register as a mortgage banker under the Act should be reversed.

DATED this 14th day of October, 2004.

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., Plaintiff/Appellant

By: _____
    Joseph T. Breckenridge, #21918
    James M. Pfeffer, #19177
    ABRAHAMS KASLOW & CASSMAN LLP
    8712 West Dodge Road, Suite 300
    Omaha, Nebraska 68114
    (402) 392-1250
    Attorneys for Petitioner/Plaintiff

22

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Brief Of Appellant was served upon Defendant/Appellee by mailing two copies of same to the following addresses by regular United States mail, postage prepaid, this 14th day of October, 2004:

Nebraska Department of Banking and Finance
Samuel P. Baird, Director
1200 N St., Ste. 311, The Atrium
Lincoln, Nebraska 68509

Nebraska Department of Banking and Finance
c/o Attorney General
2115 State Capitol Bldg.
Lincoln, Nebraska 68509
Attention:  Fredrick F. Neid

Joseph T. Breckenridge

JTB/303151.5