# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ADRIAN LUPU** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **LOAN CITY, LLC,** *et al*. | : | |
| **Defendants.** | : | |
| | : | **CIVIL ACTION NO. 12-4556** |
| **OCWEN LOAN SERVICING, LLC** | : | |
| **Third-Party Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **STEWART TITLE GUARANTY COMPANY** | : | |
| **Third-Party Defendant.** | : | |

## MEMORANDUM OPINION

**Rufe, J.**                                                                 **March 27, 2017**

Plaintiff filed suit challenging the validity of a mortgage on a residential property. Defendant Ocwen Loan Servicing, LLC, filed a third-party complaint against Stewart Title Guaranty Company, seeking to have Stewart Title defend it in this litigation under a title insurance policy. After a complex procedural history (discussed below), the case is now at the summary judgment stage both with regard to Plaintiff's claims and the insurance coverage dispute. For the reasons set forth below, the Court will dismiss all claims brought by Plaintiff, and determines that Stewart Title's duty to defend accrued as to all claims with the filing of the Fourth Amended Complaint, and that Stewart Title did not act in bad faith.

## I. BACKGROUND

### A. Facts of Record

The record before the Court shows the following facts.[1]  On May 12, 2003, Plaintiff Adrian

Lupu purchased real property in Coatesville, Pennsylvania, where he currently lives with his

wife and child.  Plaintiff is the sole grantee on the May 12, 2003 deed (he was not married at that

time).  To purchase the property, Plaintiff gave two mortgages to Fremont Investment & Loan.

On September 7, 2006, Plaintiff executed a loan application seeking to refinance.  The

application was approved, and on November 3, 2006, there was a closing for a refinance

transaction at Plaintiff's home, attended by Plaintiff, his then fiancée Rodica Stefan, and a

notary.[2]  At the closing, Plaintiff and Ms. Stefan executed a refinance mortgage dated November

3, 2006.[3]  The loan was evidenced by a note signed by Plaintiff in favor of Loan City, LLC, and

Defendant Ocwen represents that it has possession of the original note, bearing the Loan

#1001910600.

The refinance mortgage then was granted to Mortgage Electronic Registration Systems, Inc.

("MERS, Inc.") as nominee for Loan City and assigned from MERS to OneWest Bank, by an

---

[1] Because Plaintiff did not respond to the motion for summary judgment, the Court has drawn the facts from the documents of record, Defendants' statements of material facts (deemed uncontested by Plaintiff), and Plaintiff's prior filings and deposition.

[2] Plaintiff and Ms. Stefan were married on November 18, 2006.

[3] Plaintiff's signature also appears on the following documents attached to the summary judgment motion [Doc. No. 78]:
    a.  Signature/Name Affidavit dated November 3, 2006 (Ex. H).
    b.  Borrower's Certification & Authorization dated November 3, 2006 (Ex. I).
    c.  Errors and Omissions/Compliance Agreement (Ex. J).
    d.  Settlement Statement (Ex. K).
    e.  Occupancy Statement dated November 3, 2006 (Ex. L).
    f.  Borrower's Certification & Authorization dated November 3, 2006 (Ex. M).
    g.  Federal Truth-in-Lending Disclosure Statement dated November 3, 2006 (Ex. N).
    h.  Notice of Right to Cancel dated November 3, 2006 (Ex. O).
    i.  Correspondence dated October 13, 2006 (Ex. P).
    j.  Limited Power of Attorney/Correction Agreement (Ex. Q).

assignment of mortgage recorded in the Chester County Recorder of Deeds on June 15, 2012 as Doc Id.: #11188308.[4]  The refinance mortgage was next assigned to Ocwen by way of an assignment of mortgage recorded in the Chester County Recorder of Deeds Office on May 19, 2014, in Book 8924, Page 1936.  Plaintiff made payments for a time, but later stopped.

**B.      Procedural History**

This case was filed in Pennsylvania state court and removed to this Court on the basis of diversity jurisdiction.  The named defendants in the original complaint (filed *pro se*) were Loan City, MERS, Inc., Fannie Mae, and numerous John Does.  Plaintiff alleged that the use of MERS meant that the mortgage loan had been unrecorded, improperly recorded, or unlawfully converted into securities, that Plaintiff had been defrauded, and that the mortgage was void.  Of the original defendants, it appears that only Loan City was served, but it did not respond to the state-court lawsuit, and Plaintiff filed a praecipe for default judgment against Loan City.

---

[4] The use of the electronic mortgage recording system ("MERS"), operated through MERS, Inc., has been described as follows:

The typical residential mortgage finance transaction results in two legally operative documents: (1) a promissory note, a negotiable instrument which represents the borrower's repayment obligation over the term of the loan; and (2) a mortgage, representing the security interest in certain property which entitles the holder of the note to foreclose on the property in the event of default on the note. MERS enters a mortgage finance transaction when the lender and the borrower name MERS, in the mortgage instrument, as the mortgagee (as nominee for the lender and its successors and assigns).

The attendant promissory note is sold on the secondary mortgage market and may, over its term, have many owners. Sale of the note onto the secondary mortgage market principally takes two forms. In one, relatively straightforward, transaction, a lender who retains a note as part of its own loan portfolio transfers the note to another party for that party to hold for its own account or portfolio. In the other, a more complex process called securitization, the note is transferred, along with many other notes, through several different entities into a special purpose vehicle, typically a trust; the trust then issues securities backed by the trust corpus, i.e., the notes, to investors. Regardless of the secondary market route which the note takes, MERS remains the named mortgagee as a nominee for the subsequent owners of the note as long as the note is held by a MERS member.

*Montgomery Cnty. v. MERSCORP, Inc.,* 904 F. Supp. 2d 436, 439-41 (E.D. Pa. 2012) (internal citations omitted).

Plaintiff then filed a "Verified First Amended Complaint to Quiet Title," which removed Fannie Mae and MERS, Inc. from the action and named OneWest as a defendant.

After OneWest removed the case to this Court, Plaintiff filed a Second Amended Complaint, again challenging the use of the electronic recording system. OneWest then filed a motion to dismiss the Second Amended Complaint. Plaintiff opposed the motion to dismiss, and filed a motion to amend the Second Amended Complaint. The Court allowed Plaintiff to file a Third Amended Complaint as to three claims: that the default against Loan City included its assignees and successors, that the Pennsylvania recording statute had been violated, and that MERS was not a proper mortgagee. The Court dismissed claims sounding in fraud, holding that Plaintiff had failed to state a claim under Pennsylvania law.[5]

Ocwen then was substituted as a party in place of OneWest and demanded a defense from Stewart Title pursuant to the relevant Title Insurance Policy, but Stewart Title refused. Ocwen then was granted leave to file a Third-Party Complaint against Stewart Title Guaranty Company, asserting three counts relating to a title insurance policy: declaratory judgment, breach of contract, and bad faith denial of coverage.

Ocwen filed a motion for summary judgment as to the Third Amended Complaint. In opposing that motion, Plaintiff raised for the first time allegations that the relevant mortgage documents were not the documents he had signed. Based on these allegations, supported by a certification from Plaintiff, the Court denied summary judgment as to the Third Amended Complaint in the event Plaintiff sought a constructive amendment of the Third Amended Complaint.

---

[5] Order of March 21, 2013 [Doc. No. 14].

At about this time, Plaintiff obtained counsel, who was granted leave to file a Fourth Amended Complaint, asserting claims against Loan City, Ocwen, and Stewart Title.  In the Fourth Amended Complaint, Plaintiff alleged that on November 3, 2006, Stewart Title came to Plaintiff's residence for the closing, after which the attending notary "made copies of all the signed, notarized, closing documents for [the] Stewart Title Insurance file, with the title insurance policy number."[6]  According to Plaintiff, Stewart Title then submitted these documents, with the deed, to Loan City, but Loan City "discarded the Deed, created mortgage documents using a different notary from Silver Springs, [Maryland] having only Mr. Lupu's signature."[7]  Plaintiff further alleged that Loan City filed the forged mortgage in the office of Recorder of Deeds, and then transferred and assigned the forged mortgage to others, and that two of these transfers were not recorded in the Office of the Recorder of Deeds of Chester County.[8]  Plaintiff then alleged that on April 26, 2012, "MERS, as nominee for Loan City, assigned the Recorded Mortgage to One West," that the assignment was recorded in Chester County, but that MERS could not transfer the beneficial ownership rights of the mortgage.[9]  In essence, Plaintiff alleged that Loan City recorded fraudulent documents and divested itself of all interest in the mortgage within approximately one month of settlement, after which the loan was sold to another bank, and then to Fannie Mae, but that there are no recorded assignments of these transfers.  Plaintiff alleged that the eventual assignment to OneWest from MERS, Inc. was

---

[6] Fourth Amended Compl. ¶ 14.

[7] *Id.* ¶ 16.  Plaintiff alleged that the original mortgage had two signatures and was notarized by a Lancaster County, Pennsylvania notary.  *Id.*  ¶ 20.  Although not clearly alleged in the Fourth Amended Complaint, Plaintiff alleged in an earlier certification that he and his wife both signed the original mortgage.  [Doc. No. 36].

[8] *Id.* ¶¶ 18-19, 27-30.

[9] *Id.* at 32-35.

invalid as the chain of title to the property was broken and MERS, Inc. never owned the promissory note underlying the mortgage.

The Fourth Amended Complaint asserted three claims:  that default judgment against Loan City includes assignees/successors (Count One),[10] that the assignment of the mortgage to OneWest (Ocwen's predecessor) is fraudulent (Count Two), and that the title on the property is clouded by deception and Plaintiff is entitled to quiet title (Count Three, erroneously designated as Count Four).  After the Fourth Amended Complaint was filed, Stewart Title agreed to provide a defense to Ocwen, but only with regard to Count Three, not to Counts One and Two.

## II.     LEGAL STANDARD

"The underlying purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."[11]  A court will award summary judgment on a claim or part of a claim where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12]  A fact is "material" if resolving the dispute over the fact "might affect the outcome of the suit under the governing [substantive] law."[13]  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[14]

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.[15]

---

[10] Only default, not default judgment, has been entered against Loan City.

[11] *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976)).

[12] Fed. R. Civ. P. 56(a).

[13] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[14] *Id.*

[15] *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

Further, "a court may not weigh the evidence or make credibility determinations."[16] Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record.[17] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[18] Therefore, if, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine dispute as to any material fact, summary judgment is appropriate.[19] "In a diversity case, when faced with a motion for summary judgment, the federal courts follow federal law on issues of procedure but apply the substantive rule of decision from state law," which the parties here agree is Pennsylvania law.[20] Because Plaintiff has not responded to the summary judgment motions, the Court is limited to consideration of the record produced by Defendants as well as documents previously filed.

The rule is no different where there are cross-motions for summary judgment.[21] As stated by the Third Circuit, "[c]ross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist."[22]

---

[16] *Boyle v. Cty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998).

[17] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[18] *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

[19] *Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

[20] *Peterman v. Sakalauskas*, 978 F. Supp. 2d 439, 443 (E.D. Pa. 2013) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

[21] *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008).

[22] *Id.* (internal quotation omitted).

III.    **DISCUSSION**

A.    **Ocwen's Motion for Summary Judgment Against Plaintiff**

Ocwen has moved for summary judgment on all of Plaintiff's claims.  With regard to Count One, that default judgment against Loan City includes assignees or successors, Ocwen argues that the default occurred after the mortgage had been assigned to OneWest, Ocwen's predecessor in interest.  As to Count Two, where Plaintiff alleges that the assignment of the mortgage to OneWest was fraudulent either because MERS cannot execute an assignment of mortgage or because the mortgage filed was not the one Plaintiff signed, Ocwen argues that a mortgage may be assigned through MERS and that Plaintiff did enter into the loan transaction evidenced by the note and mortgage.  Finally, Ocwen argues that as to Count Three, Plaintiff's allegations that title on the property is clouded by deception and Plaintiff is entitled to quiet title fail because Plaintiff cannot establish that the recorded refinance mortgage was forged, and that in any event Plaintiff acknowledged entering into the transaction.[23]

"The purpose of a quiet title action is to settle competing claims to interests in property or to determine right or title or the validity of any deed affecting any interest in land."[24]  "Under Pennsylvania law, a plaintiff may file a quiet title action to determine 'the validity of any document, obligation or deed affecting any right lien, title or interest in land.' . . . [W]here a borrower challenges a defective mortgage assignment, he must 'demonstrate potential injury from the enforcement of the note and mortgage by a party acting under a defective

---

[23] Ocwen also argues that Counts One and Two should be dismissed because this Court previously determined that "Plaintiff was granted to leave to file a Third Amended Complaint to pursue a claim to quiet title under Pennsylvania law.  Despite Plaintiff's attempt to raise other issues, that is the only claim remaining in this case."  Order of Sept. 22, 2014 [Doc. No. 38] (citing Order of March 21, 2013 [Doc. No. 14]).  The court held that the quiet title claims essentially were encapsulated within the claims relating to the default against Loan City and the challenge to the assignment of the mortgage. The Court considers Counts One and Two to the extent that those counts raise issues relating to quiet title.

[24] *Cornwall Mountain Investments, L.P. v. Thomas E. Proctor Heirs Trust*, No. 1706 MDA 2015, 2017 WL 1057496, at *10 (Pa. Super. Ct. Mar. 21, 2017).

assignment.'"[25]  This means that "the only interest or right which an obligor . . . has in the instrument of assignment is to insure him or herself that he or she will not [h]ave to pay the same claim twice."[26]

The default as to Loan City has no legal effect on the quiet title claim because the assignment of the mortgage occurred before the default was sought or entered, and therefore there is no basis for a claim to quiet title against Loan City.  The Court therefore declines to enter default judgment against Loan City, and will strike the entry of default and dismiss the claims against this Defendant.   With regard to any claims concerning MERS, the mortgage documents show that the use of MERS was anticipated and disclosed at the time of the mortgage loan and that Plaintiff consented to the use of MERS, Inc. as nominee, thus precluding any claim as to the use of MERS.[27]  Accordingly, Plaintiff has no claim regarding the use of MERS.

This case proceeded primarily because Plaintiff raised serious and not facially implausible claims of forgery.  However, the record has been developed through discovery, and Plaintiff has not produced any evidence from which a factfinder could conclude that the mortgage documents were invalid or forged.  Importantly, the record includes Plaintiff's deposition, in which Plaintiff's testimony is simply too equivocal and confusing to present a genuine issue of material fact with regard to the claims made.  Plaintiff did not testify as to the amount of the mortgage that he and his wife supposedly executed, Plaintiff produced no signed mortgage documents that differ from the documents produced of record, there is no evidence

---

[25] *Khan v. Ocwen Fin. Corp.*, No. CV 16-3292, 2017 WL 590262, at *3 (E.D. Pa. Feb. 13, 2017) (quoting Pa. R. Civ. P. 1061(b) (2), (3); other quotation marks and citations omitted).

[26] *Id.* (internal quotation marks and citations omitted; ellipses in original).

[27] *Mortgage Elect. Registration Systems Inc. v. Ralich*, 982 A.2d 77 (Pa. Super. Ct. 2009).  To the extent that any of the transfers of the mortgage and note were not recorded, the Third Circuit held (after the earlier rulings in this case) that Pennsylvania law "does not impose a duty to record all land conveyances."  *Montgomery Cnty. v. MERSCORP Inc.*, 795 F.3d 372, 376 (3d Cir. 2015) (citing 21 Pa. Stat. § 351).

from Plaintiff's wife, who is not a party to this action, no expert has opined as to the genuineness of the signatures, and Plaintiff did not even definitively testify that it was not his signature on the recorded documents.[28]   Also, if the forged documents were of record in 2006, Plaintiff has not explained the delay in filing this action until 2013.[29]   Under Pennsylvania law, "one who seeks to rebut the presumption of the due execution and acknowledgement of a deed with proof of a forgery must do so by a preponderance of clear and convincing evidence."[30]   Plaintiff has failed to produce such evidence and the Court will grant the motion for summary judgment. [31]   This ruling also establishes as a matter of law that Plaintiff cannot prevail on any claims against Stewart Title.[32]

## B.      Third-Party Complaint

Ocwen and Stewart Title have filed cross-motions for summary judgment with regard to the Third-Party Complaint.  This requires the Court to determine when Stewart Title's duty to defend arose, how expansive that duty is, and whether Stewart Title acted in bad faith in its coverage decisions.

---

[28] Plaintiff testified that the signature on one document "looks like my signature" but that he believed it was not his signature because he "never sign[ed] this paper in front of any kind of notary." Lupu Dep. at 39 [Doc. No. 78-2].  Similarly, Plaintiff testified as to another document that "this look[s] like my signature, but I'm not sure it's my signature."  *Id.* at 42.

[29] *Warehouse Builders & Supply Inc. v. Perryman*, 257 A.2d 349, 351 (Pa. Super. Ct. 1969) (delay in acting on asserted forgery estopped the plaintiff "from asserting against the assignees whatever right he might have had against the assignors (even though they were innocent of the forgery) if action had been taken immediately upon his alleged knowledge of the forgery").

[30] *Id.* at 350 (holding that a party failed to meet this burden when he "presented no corroborating evidence by the persons who could have given testimony regarding the execution of the deed, such as the person signing as witness to his signature and the Notary Public who subscribed as having notarized his signature," or "a handwriting expert in support of the contention that his signature to the deed was forged").

[31] The Court has not determined the validity of any of the recorded documents.  Instead, the Court grants summary judgment because in this case, the burden is on Plaintiff to establish the invalidity of the documents and there is no evidence of record from which a factfinder could conclude that the mortgage documents are not genuine.

[32] Moreover, in his deposition, Plaintiff testified that he had no knowledge of what actions Stewart Title may have taken and contrary to the Fourth Amended Complaint, he testified that no one from Stewart Title appeared at the closing at the house.  Lupu Dep. at 111-13 [Doc. No. 78-2].

10

1.    Duty to Defend

Under Pennsylvania law, the insurer has a duty to defend the insured if the complaint in the underlying case alleges facts that support recovery under the policy.  "In determining the existence of a duty to defend, the factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of the insured."[33]  "'[T]he particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered. Instead it is necessary to look at the factual allegations contained in the complaint.'"[34]  "[A] court in determining if there is coverage does not look outside the allegations of the underlying complaint or consider extrinsic evidence."[35]  Instead, the court looks only to the complaint and the language of the policy.[36]

The first question is when the duty to defend arose in this case; that is, whether the filing of the Third Amended Complaint or the Fourth Amended Complaint alleged a claim that potentially brought this action within the ambit of the title insurance policy.[37]  The Court holds that, as a matter of law, the duty to defend arose with the filing of the Fourth Amended Complaint.  The basis for coverage stems from claims of invalidity or forgery of a mortgage. The Third Amended Complaint, filed when Plaintiff was proceeding *pro se*, was not a model of

---

[33] *Nationwide Mutual Insur. Co. v. CPB Intern'l, Inc.,* 562 F.3d 591, 595-96 (3d Cir. 2009) (internal quotation and citation omitted).

[34] *Schuylkill Stone Corp. v. State Auto. Mut. Ins. Co.*, 735 F. Supp. 2d 150, 155 (D.N.J. 2010) (quoting *Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999), and applying Pennsylvania law).

[35] *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 673 (3d Cir. 2016) (citing *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006) ) (footnote omitted).

[36] *Id.* at n.9.

[37] As is relevant here, the policy provides coverage for claims for damages relating to "1. Title to the estate or Interest described in Schedule A being vested other than as stated therein; . . . 5. The invalidity or unenforceability of the lien of the Insured Mortgage upon the title; . . . [and] 22. Forgery after Date of Policy of any assignment, release or reconveyance (partial or full) of the Insured Mortgage."  Title Ins. Policy. Ex. 1 to Stewart Title's Mot. Summ. J. [Doc. No. 76-3].

clarity (as this Court has previously noted), and the issue of whether the recorded mortgage documents were forged or invalid was only raised in response to earlier summary judgment motions, which is why the Court granted leave to file a Fourth Amended Complaint.[38]  Not until the Plaintiff's response to the earlier motion for summary judgment did it become evident that Plaintiff challenged the validity of the mortgage documents instead of the method of recordation, and it is the complaint, not other documents, that determine whether a claim is potentially within the ambit of the policy.  The first complaint to allege potentially covered claims was the Fourth Amended Complaint.  The Court will grant summary judgment in Stewart Title's favor on this issue.

The Court next must determine the scope of the duty to defend.  The general rule of insurance defense in Pennsylvania is that if any claim in the underlying lawsuit is potentially covered, the insurer must provide a defense as to all claims asserted against the insured, until such time as the action is confined to claims that are not covered.[39]  However, Stewart Title argues that title insurance policies should be construed differently, to extend the duty to defend only to those claims within the contours of the policy.

The title insurance policy states that it "shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy."[40]  Stewart Title argues that this language is part of a standard

---

[38] The Court does not hold that earlier complaints were required to use any particular words to invoke the duty to defend, but that the scope of the claims as alleged earlier was not understood by the Court or the parties to implicate the legitimacy of the mortgage documents until the arguments made by Plaintiff in response to the earlier motion for summary judgment.

[39] *CPB Intern'l,* 562 F.3d  at 596.

[40] Title Insurance Contract ¶ 4(a), *cited in* Stewart Title's Mem. Supp. Summ. J. at 20-21 [Doc. No. 76-2].

form of policy approved by the Pennsylvania Department of Insurance and used by all title underwriters in Pennsylvania, and that the language of the policy must be given effect, thus limiting the defense only to covered claims.

In support of its position, Stewart Title primarily relies upon a decision by the Supreme Judicial Court of Massachusetts, which held that under Massachusetts law, "the 'in for one, in for all' rule of general liability insurance defense" does not apply "in the unique title insurance context."[41]  The court explained that title insurance is "fundamentally different" from general liability insurance because it is "directed at risks that are already in existence on the date the policy is issued," and cited essentially the same policy language at issue here.[42]  That court also acknowledged "the paucity of cases involving the scope of title insurance defense" and noted that it might revisit the question "if lessons that emerge from practice so warrant."[43]  To date only one court has followed the Massachusetts rule.[44]

The scope of the duty to defend here turns on Pennsylvania law, and Stewart Title points to no Pennsylvania cases that have permitted the language of an insurance policy to supplant the public policy of Pennsylvania as set forth in the case law; nor even a case where the argument has been raised.  In contrast it is well settled in Pennsylvania that "a title insurance policy is subject to the same rules of construction that govern other insurance policies" and must be "liberally construed in favor of the insured party to maximize coverage" while considering "the

---

[41] *GMAC Mortg. v. First American Title Ins.*, 985 N.E.2d 823, 828 (Mass. 2013).

[42] *Id.* (internal quotation marks and citation omitted).

[43] *Id.* n.7.

[44] The Court of Appeals for the Seventh Circuit found this analysis persuasive, and predicted that the Illinois Supreme Court would not apply the "complete-defense rule" to title insurance policies, and thus enforced policy language identical to that at issue.  *Phila. Indem. Ins. Co. v. Chicago Title Ins. Co.*, 771 F.3d 391, 399 (7th Cir. 2014).

language of the policy and the expectation of the insured so as to give reasonable meaning to its terms."[45]

Although there is tension between the precepts of giving effect to the contractual language and interpreting the duty to defend to extend to all claims, the Court determines that in the absence of any indication that the Pennsylvania appellate courts are inclined to view title insurance policies differently from other insurance policies, the general rule must apply, and the Court declines to predict that the Pennsylvania Supreme Court would adopt the Massachusetts rule.[46]   Particularly in this case, where the claims are intertwined so that the defense of all claims is closely related, the Court determines that to hold otherwise would muddy the otherwise clear scope of the duty to defend.  Therefore, under Pennsylvania law, as Stewart Title had an obligation to defend Ocwen as to one of the claims in the Fourth Amended Complaint, it had a duty to defend as to all claims in the Fourth Amended Complaint.  The Court will grant summary judgment in favor of Ocwen on this issue.

2.    Bad Faith

Finally, Ocwen argues that Stewart Title acted in bad faith in failing to tender a defense sooner and in refusing to defend against certain claims.  To succeed on a statutory bad faith claim under Pennsylvania law, the insured must show that the insurer breached its duty of good

---

[45] *Rood v. Commonwealth Land Title Ins. Co.*, 936 A.2d 488, 491 (Pa. Super. Ct. 2007) (internal citations omitted).

[46] In relatively recent unpublished decisions, the Pennsylvania Superior Court has interpreted the duty to defend in title insurance cases, without any suggestion of limiting the scope of the duty to defend either through the language of the policy or as a matter of Pennsylvania law.  *Stewart Title Guaranty Co. v. McClain*, No. 3423 EDA 2014, 2016 WL 1436613 (Pa. Super. Ct. Apr. 12, 2016) (non-precedential); *Dutch Run-Mays Draft, LLC v. Lawyers Title Ins. Corp.*, No. 2002 EDA 2012, 2013 WL 11250726, at *3 (Pa. Super. Ct. Nov. 13, 2013) (non-precedential) (holding that if "there are multiple causes of action and one would potentially constitute a claim within the scope of the policy's coverage, the insurer would have a duty to defend until it could confine the claim to a recovery excluded from the policy" (internal quotation marks and citation omitted)).  The Court does not cite these unpublished cases as precedent, but only to note that the issue does not appear to be on the radar of the Pennsylvania courts at this time.

faith and fair dealing.[47]  Ocwen alleges that Stewart Title denied benefits under the policy without a reasonable basis for doing so, and knew or recklessly disregarded the lack of reasonable basis when denying the claim.  The Court concludes as a matter of law that Stewart Title's interpretation of the pleadings was not made with knowing or reckless disregard of whether the denial of coverage was reasonable.  The Court has ruled in favor of Stewart Title as to when the duty to defend arose, so Stewart Title cannot have acted in bad faith in that regard. The Court also determines that Stewart Title cannot be said to have acted in bad faith in arguing that the duty to defend is more limited in title insurance cases; there is case law from other jurisdictions supporting its argument.[48]  The Court will grant summary judgment in favor of Stewart Title on the bad-faith claim.

## IV.    CONCLUSION

For the reasons set forth above, the Court will dismiss with prejudice Plaintiff's Fourth Amended Complaint in its entirety.  The Court will grant in part and deny in part the cross-motions for summary judgment on the Third-Party Complaint with the result that Stewart Title had a duty to defend Ocwen as to all claims asserted in the Fourth Amended Complaint and did not act in bad faith, which resolves all liability issues raised in the Third-Party Complaint.  An order will be entered.

---

[47] 42 Pa. C.S.A. § 8371.

[48] In addition, the policy language quoted earlier provided an additional argument for the denial of a defense as to the other claims and further supports a finding that Stewart Title did not act in bad faith.